## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ERIK DANIEL CHRISTIANSON,           Civil No. 16-1034 (JRT/KMM)

                 Plaintiff,

v.

**ORDER**

JEFFREY MARKQUART, *in his official capacity as Martin County Sheriff*,

                 Defendant.

---

Bradford W. Colbert, **LEGAL ASSISTANCE TO MINNESOTA PRISONERS, MITCHELL HAMLINE SCHOOL OF LAW**, 875 Summit, Room 254, St. Paul, MN 55105, for plaintiff.

Andrew Allen Wolf and Jason M. Hiveley, **IVERSON REUVERS CONDON**, 9321 Ensign Avenue South, Bloomington, MN 55438, for defendant.

Plaintiff Erik Christianson brings this action against Jeffrey Markquart, in his official capacity as Martin County Sheriff, for assessing pay-for-stay costs against Christianson during his stay at Martin County Jail. In 2013 and 2014, Christianson was incarcerated at the Martin County Jail on four separate occasions. In total, Christianson accrued $7,625 in pay-for-stay costs. He subsequently sent three letters to Markquart stating that he does not have the ability to pay the costs and requesting that the jail waive payment of the costs pursuant to Minn. Stat. § 641.12, subd. 3(b). Markquart did not respond, and Christianson initiated the present action. Christianson argues that Markquart violated Minn. Stat. § 641.12, subd. 3(b), and the Due Process Clauses of the United States and Minnesota Constitutions by failing to assess whether Christianson qualifies for a waiver of payment of the pay-for-stay costs. Markquart moves for summary judgement.

Because the Court finds that the there is no genuine issue of material fact and concludes that Markquart violated Minn. Stat. § 641.12, subd. 3(b), the Court will deny Markquart's motion for summary judgment. Instead, the Court will *sua sponte* enter judgment for Christianson.

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A. Pay-for-Stay Costs

Minn. Stat. § 641.12, subd. 3(a), authorizes county jails to require "a person convicted of a crime and confined in the county jail" to "pay the cost of the person's room, board, clothing, medical, dental, and other correctional services." The statute provides the county with broad authority to collect these pay-for-stay costs, permitting the sheriff to "use any available civil means of debt collection in collecting costs" and to collect the costs "at any time while the person is under sentence or after the sentence has been discharged." *Id.*

But the sheriff's discretion to impose pay-for-stay costs is not unfettered. Minn. Stat. § 641.12, subd. 3(b), requires the sheriff to determine whether an inmate qualifies for a waiver from payment of the pay-for-stay costs. Specifically, the statute provides:

> The chief executive officer of the local correctional agency or sheriff **shall** waive payment of the costs under this subdivision if the officer or sheriff determines that the person does not have the ability to pay the costs, payment of the costs would create undue hardship for the person or the person's immediate family, the prospects for payment are poor, or there are extenuating circumstances justifying waiver of the costs.

Minn. Stat. § 641.12, subd. 3(b) (emphasis added).

Martin County Jail charges inmates $25 for each day they are jailed.  (Compl. ¶ 11, Apr. 20, 2016, Docket No. 1.)  Pay-for-stay costs do not begin to accrue until the inmate is sentenced.  (Aff. of Jeffrey Markquart ("Markquart Aff.") ¶ 4, Aug. 1, 2017, Docket No. 30.)  At the end of their stay, Martin County Jail provides the inmate with a pay-for-stay statement of the accrued costs.  (*See id.* ¶ 11, Ex. 1 at 2.)  The statement notifies the inmate of the costs per day and the jail's statutory authority.  (*See id.*)  The statement also explains collection procedures and how to dispute the charges:

> Accounts not paid in full following release from jail will be turned over to an independent billing company.  Accounts without satisfactory payment activity will be referred to collections in accordance with the policies of the billing company.  **Any disputes regarding the amount owed must be presented in writing to the Jail Administration for resolution.**

(*Id.* (emphasis added).)  Markquart admits that the jail does not inquire about the individual's financial situation but claims individuals are informed that "any disputes must be brought in writing, and it is up to the inmates themselves to follow the process to receive a waiver."  (Markquart Aff. ¶ 7.)

### B.     Christianson's Stay in Martin County Jail

Throughout 2013 and 2014, Christianson was incarcerated at the Martin County Jail on four separate occasions. (Compl. ¶¶ 6-7.) He was given a pay-for-stay statement at the end of each stay. (Markquart Aff. ¶¶ 11-14, Exs. 1-4.) In total, Christianson accrued $7,625 in pay-for-stay costs. (*See id.* ¶¶ 11-14, Exs. 1-4.)

In an effort to collect these pay-for-stay costs, the Martin County Jail forwarded Christianson's debts to Grand American Resources, Inc. ("Grand American"), which has sent Christianson three letters and has called Christianson between 18 and 20 times. (Decl. of Christopher Winkelman ("Winkelman Decl.") ¶ 3, Aug. 1, 2017, Docket No. 32.) Grand American has not collected any money from Christianson. (*Id.* ¶ 4.)

In June 2015, Christianson's attorney sent two letters to Markquart stating that Christianson does not have the ability to pay the pay-for-stay costs and requesting that the Markquart waive payment of the costs. (Aff. of Bradford Colbert ("Colbert Aff.") ¶¶ 2, 6, Exs. 1-2, Aug. 21, 2017, Docket No. 36.) Neither Christianson nor his attorney received a response to either letter. (Colbert Aff. ¶ 4.) On March 28, 2016, Christianson's attorney sent a third letter with an enclosed summons and complaint. (*Id.* ¶ 6, Ex. 3 at 6.) The third letter requested that Markquart either consider Christianson's eligibility for a waiver or accept service of the summons and complaint. (*Id.*) Rather than responding to the letter, Markquart filed a notice to remove the case to federal court. (*Id.* ¶ 5.)

## II. PROCEDURAL BACKGROUND

Christianson's complaint alleges three claims against Markquart. First, Christianson alleges that Markquart violated the Due Process Clause of the United States Constitution and the Minnesota Constitution by failing to provide Christianson with a hearing before levying pay-for-stay costs against him. (Compl. ¶¶ 16-20.) Second, Christianson alleges that the assessment of pay-for-stay costs violates the Equal Protection Clause of the United States Constitution and the Minnesota Constitution. (Compl. ¶¶ 21-25.) Third, Christianson alleges that Markquart violated Minn. Stat. § 641.12, subd.3(b), by failing to make any determination regarding Christianson's ability to pay the pay-for-stay costs. (Compl. ¶¶ 26-30.) Christianson has since dropped his equal-protection claim. (Mem. Opp. Summ. J. ("Opp.") at 6 n.2, Aug. 21, 2017, Docket No. 35.)

Markquart moves for summary judgment.

## DISCUSSION

## I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the

light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 474 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256. But "where the moving party fails to satisfy its burden to show initially the absence of a genuine issue concerning any material fact, summary judgment must be denied even if no opposing evidentiary matter is presented." *Foster v. Johns-Manville Sales Corp.*, 787 F.2d 390, 393 (8th Cir. 1996).

The Court may grant summary judgment *sua sponte* so long as the party against whom judgment will be entered was given sufficient advance notice and adequate opportunity to demonstrate why summary judgment should not be granted. See Fed. R. Civ. P. 56(f); *Madewell v. Downs*, 68 F.3d 1030, 1048-49 (8th Cir. 1995); *see also Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan*, 544 F. Supp. 2d 848, 858 (D. Minn. 2008).

"A court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering the constitutional question." *Califano v. Yamasaki*, 442 U.S. 682, 692 (1979). When considering issues of state law, the Court is bound by the decisions of the state's highest court. *Cassello v. Allegiant Bank*, 288 F.3d 339, 340 (8th Cir. 2002). To the extent that the Minnesota Supreme Court has not decided a question, the Court must "apply the rule of decision that [it] believe[s] the state's highest court would apply." *Id.*

Under Minnesota law, the goal of statutory interpretation is to ascertain the intention of the legislature. *Marks v. Comm'r of Revenue*, 875 N.W.2d 321, 324 (Minn. 2016); *see also* Minn. Stat. § 645.16 (2016). The Court reads and interprets the statute as a whole. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277-78 (Minn. 2000). When the plain language of the statute is unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *State v. Peck*, 773 N.W.2d 768, 772 (Minn. 2009); *see also* Minn. Stat. § 645.16. A statute is ambiguous if it is susceptible to more than one reasonable meaning. *Am. Family Ins. Grp.*, 616 N.W.2d at 277. If the Court determines that the statute is ambiguous, it applies "other canons of construction to discern the legislature's intent." *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn. 2010).

## II. IMMUNITY

The Court must first decide whether Markquart is entitled to any form of immunity in this case.[1] Markquart argues that Christianson's claims brought against him his official capacity should be dismissed based on (1) qualified immunity and (2) the common-law doctrine of official immunity. The doctrine of qualified immunity applies to Christianson's § 1983 claims; the common-law doctrine of official immunity applies to Christianson's state-law claims. *Elwood v. Cty. of Rice*, 423 N.W.2d 671, 676-79 (Minn.

---

[1] Christianson has not brought any claims against Markquart in his individual capacity. The complaint explicitly names "Jeffrey Markquart, **in his official capacity as Martin County Sheriff**" as the sole defendant. (Compl. at 1.) There are no individual-capacity claims against Markquart for the Court to dismiss.

1988) (recognizing that the federal doctrine of qualified immunity is distinct from Minnesota's common-law doctrine of official immunity). Both of these immunity doctrines apply only to claims for damages and not claims for equitable relief, such as declaratory or injunctive relief.[2] Christianson is seeking only equitable relief. Markquart is therefore not immune from suit in the present action.

### III.   VIOLATION OF MINN. STAT. § 641.12

The Court must consider whether Markquart violated Minn. Stat. § 641.12, subd. 3(b), before considering Christianson's constitutional claims. *See Califano*, 442 U.S. at 692.

There is no dispute that the Martin County Jail has the statutory authority to collect pay-for-stay costs. Minn. Stat. § 641.12, subd. 3(a). But with this authority comes an obligation to assess whether the inmate can afford to pay the assessed pay-for-stay costs. Minn. Stat. § 641.12, subd. 3(b) states that the sheriff "**shall** waive payment of the costs under this subdivision" if the sheriff determines that the inmate "does not have the ability to pay the costs." "The canons of statutory construction provide that 'shall' is mandatory." *State v. Humes*, 581 N.W.2d 317, 319 (Minn. 1998). Under the plain and unambiguous meaning of Minn. Stat. § 641.12, subd. 3(b), a sheriff **must** determine an inmate's eligibility for a waiver from payment for the pay-for-stay costs.

---

[2] *See Curtiss v. Benson*, 583 F. App'x 598, 599 (8th Cir. 2014); *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994); *Guite v. Wright*, 976 F. Supp. 866, 869 (D. Minn. 1997); *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 569 (Minn. 1994).

There is no dispute that Markquart or the Martin County Jail never determined whether Christianson qualifies for a waiver under Minn. Stat. § 641.12, subd. 3(b). Markquart did not assess Christianson's eligibility at the time of release or even after receiving three letters. Markquart did not even respond to Christianson's letters.[3] The Court is left to ask: When did Markquart intend to determine whether Christianson qualified for waiver of the pay-for-stay costs?

Minn. Stat. § 641.12, subd. 3(b) **requires** Markquart to determine whether Christianson qualifies for a waiver of payment of pay-for-stay costs **at some point**. The

---

[3] At oral argument, Markquart's attorney asserted that the reason Markquart did not respond to the letters is because they came from Christianson's attorney. This proposition is absurd.

Nothing about the first two letters suggests that Markquart was being sued. The letters kindly ask Markquart "revisit and waive the pay for stay charges." (*See* Colbert Aff. ¶ 6, Ex. 1.) The third letter even states that "**[i]n the event that you will not reconsider**, it is our intent to bring a lawsuit in district court." (*Id.*, Ex. 3.) Markquart was first given the option of responding to the letters. Markquart could have even chosen to consult with an attorney in drafting a response to the letters. Instead, Markquart chose to ignore these letters in hopes that Christianson and his claims would disappear without further complaint.

By seeking the advice of an attorney, Christianson simply sought to protect his rights. The attorney serves a fundamental role in the legal system by protecting the rights of all citizens. This is not a principle that the Court should need to teach Markquart. Markquart is an officer of the court. *Zillgitt v. Goodhue Cty. Bd. of Comm'rs*, 202 N.W.2d 378, 380 (Minn. 1972). As an officer of the court, Markquart knows the importance of protecting individuals' rights – whether statutory or constitutional. He also knows the role that attorneys serve in protecting these rights.

Markquart's decision to ignore Christianson's letter accomplishes only one thing: it engenders a belief among citizens that our legal institutions cannot be trusted. Markquart was presented with a perceived violation of an individual's rights: He did not evaluate whether Christianson should have received a waiver. Markquart did not even respond to Christianson's complaint by stating why Christianson would not qualify for a waiver. He simply chose to ignore the perceived violation of Christianson's rights. All Markquart has done is lead Christianson and others to believe that Martin County does not care enough about the legal rights of its citizens to even respond to their concerns.

Court need not decide at this stage whether the statute (or the United States Constitution or the Minnesota Constitution) requires this determination before the assessment of pay-for-stay costs or whether the statute permits the sheriff to wait until the inmate has filed an objection to the costs. The issue is not **when** Markquart chose to determine whether Christianson qualifies for a waiver; the issue is that Markquart **never** made such a determination.

It is apparent to the Court that Martin County Jail has no procedures to assess whether an inmate qualifies for a waiver under Minn. Stat. § 641.12, subd. 3(b). The pay-for-stay statement given to inmates in Martin County Jail instructs them to contact Jail Administration in writing to dispute the costs. Then what? Christianson sent Markquart three letters and never received one response. When pressed at oral argument what procedures Martin County Jail uses to comply with Minn. Stat. § 641.12, subd. 3(b), Markquart evaded the question. Not once did Markquart attempt to explain to the Court what Christianson should have done to seek his waiver. Markquart argues that the statute does not require him to evaluate whether an inmate qualifies for a waiver **before** assessing the pay-for-stay costs. True. Markquart also argues that the statute does not provide any procedures for **how or when** he is supposed to determine whether Christianson qualifies for a waiver. Also true. But in making both arguments, Markquart ignores that the statute requires him to make this determination. In effect, Markquart argues that he cannot fulfill his statutory duties without significant legislative handholding.

When the legislature expects a government actor to implement a statute, it rarely speaks with the specificity of an instruction manual. Markquart has a duty to determine whether Christianson and other similarly situated inmates qualify for a waiver from payment of pay-for-stay costs. Minn. Stat. § 641.12, subd. 3(b). Implicit in this statutory mandate is an obligation to develop the necessary procedures to carry out this task. The Court expects Markquart – as sheriff of Martin County – to do develop such procedures.[4]

There is no genuine dispute of material fact that Markquart did not determine whether Christianson was entitled to a waiver under Minn. Stat. § 641.12, subd. 3(b). Markquart violated Minn. Stat. § 641.12, subd. 3(b), by failing to make such a determination. The Court will therefore deny Markquart's motion for summary judgment. Instead, the Court will enter judgment for Christianson. *See Madewell*, 68 F.3d at 1048-49.[5] The Court will order Markquart to create such procedures as necessary to carry out his duty under Minn. Stat. § 641.12, subd. 3(b). To ensure that Christianson's potential rights under Minn. Stat. § 641.12, subd. 3(b) are protected while he awaits the creation of such procedures, the Court will enjoin Markquart and all those

---

[4] To be clear, the Court is not considering whether Minn. Stat. § 641.12, subd. 3(b), mandates a particular type of procedure or whether any such procedures would satisfy the Due Process Clause. If Christianson or any other inmate believes that the procedures ultimately created by Markquart are statutorily or constitutionally deficient, they are free to bring another challenge to those procedures.

[5] The Court finds that Markquart was given sufficient advance notice and adequate opportunity to demonstrate why summary judgment should not be granted. *See Madewell*, 68 F.3d 1030, 1048-49 (8th Cir. 1995). In his opposition brief, Christianson suggested that the Court could grant summary judgment against Markquart. (Pls.' Mem. Opp. Mot. Summ. J. at 3, Aug. 21, 2017, Docket No. 35.) Markquart had an opportunity to respond to this suggestion in his reply brief and at oral argument.

acting in concert or participation with him from collecting or attempting to collect from Christianson any debts resulting from pay-for-stay costs owed to Martin County.

## ORDER

Based on the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Court **DENIES** Markquart's Motion for Summary Judgment [Docket No. 26].

2. The Court **DECLARES** that Markquart violated Minn. Stat. § 641.12, subd. 3(b), by failing to determine whether Christianson qualifies for a waiver from payment of pay-for-stay costs.

3. The Court **ORDERS** Markquart to file an affidavit and supporting documents within sixty (60) days of this Order certifying that he has created the procedures necessary to comply with Minn. Stat. § 641.12, subd. 3(b).

4. The Court **ENJOINS** Markquart and all those acting in concert or participation with him from collecting or attempting to collect from Christianson any debts resulting from pay-for-stay costs owed to Martin County until Markquart has filed an affidavit with the Court as required by paragraph 3 of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: January 17, 2018  _____s/John R. Tunheim_____
at Minneapolis, Minnesota.  JOHN R. TUNHEIM
Chief Judge
United States District Court